ROBERT SHRIVER *vs.* JOSHUA W. HERING, Comp-
TROLLER OF THE STATE OF MARYLAND.

*Public Schools—Apportionment by Comptroller of Fund for Colored Schools—Construction of Code, Art. 77.*

Code, Art. 77, sec. 98, provides that "the Comptroller shall apportion the sum appropriated for the support of the colored schools of the several counties and the city of Baltimore in proportion to their respective population between the ages of five and twenty years." And sec. 102 of said article directs the Comptroller to apportion the amount levied for schools by taxation to the several counties and the city of Baltimore in proportion to their respective population between the ages of five and twenty years. Appellant's petition for a *mandamus* in this case alleged that the Comptroller's practice has been to apportion the sum distributable under sec. 98 according to the colored population of the counties of school age, and the sum distributable under sec. 102 according to the entire population of the counties of school age, including both white and colored ; and the petition asked that the Comptroller be asked to apportion the school fund under sec. 102, according to the white population of the counties of school age instead of according to the entire population of that age. *Held,* that the language of the two sections is so similar that the same construction must be placed upon both ; that the construction asked for by the petitioner could not be made without inserting the word *white* before the word *population* in section 102 and the word *colored* before the word *population* in section 98 ; that the two sections plainly direct the Comptroller to distribute both funds according to the entire population of the counties between the ages of five and twenty years.

Appeal from the Circuit Court for Anne Arundel County (JONES, C. J., and THOMAS, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*Albert A. Doub* (with whom were *D. James Blackiston* and *Jas. W. Owens* on the brief), for the appellant.

*Isidor Rayner, Attorney-General,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

Robert Shriver, a citizen and taxpayer of Allegany county, on May 15th, 1902, filed a petition in the Circuit Court for Anne Arundel county against Joshua W. Hering, Comptroller of the State of Maryland, praying for a writ of *mandamus* commanding said Comptroller, in the distribution to be made December 15th, 1902, and at each succeeding quarterly distribution, to apportion the State school tax levied in each county and in the city of Baltimore, for the support of public schools therein, in proportion to ther respective *white* population between the ages of five and twenty years, instead of apportioning the same according to their respective *entire* population between said ages, as had always been the method of apportionment since the institution of the public school system in eighteen hundred and sixty-five.

The defendant answered alleging that the method of apportionment pursued was that required by the statute regulating the same, and that he proposed to observe the statute as heretofore.

The petitioner demurred to this answer ; issue was joined on the demurrer, and after argument the writ was refused and the petition dismissed, from which order this appeal was taken.

The case was very earnestly and zealously argued in behalf of the petitioner, but we do not think there should be any hesitation in affirming the order of the Circuit Court. Counsel on both sides unite in stating that the question at issue is simply the construction of sections 98 and 102 of Art. 77, of the Code of Public General Laws, which are as follows :

Section 98. " The Comptroller shall apportion the sum appropriated for the support of the colored schools of the several counties and the city of Baltimore, in proportion to *their* respective population between the ages of five and twenty years ; said apportionment to be made at the time he apportions the levy for the white schools."

Section 102. "As soon as the Comptroller shall have received from the city of Baltimore and the several counties, returns of the amount of the State school tax, levied in each

county and the city of Baltimore, he shall immediately there-
after apportion the amount of the whole levy to the several
counties and the city of Baltimore, in proportion to their re-
spective population between the ages of five and twenty years."

The petitioner's counsel was explicit in his oral argument,
in declaring that these sections of the law are valid and con-
stitutional enactments, and in his brief says they "are word
for word the same and the plaintiff merely asks that they be
given the same construction."

The construction for which the petitioner thus asks, we
must understand to be purely a judicial construction since
that is the only one we have the power to make, and such
construction must be made upon the language of these sec-
tions, and not upon the practice which may have been pur-
sued by the Comptroller in the absence of a previous judicial
construction.    Now looking to the language of these two sec-
tions as they stand, it cannot be doubted that they should,
and must, receive the same construction, and that the only
construction that can be placed upon them by a Court, which
is precluded from the exercise of legislative power, is that
placed by the Comptroller upon section 102.    The word
"*their*" which in each of these sections precedes the words
"respective population," grammatically and logically can only
relate to their immediate antecedents, "the several counties
and the city of Baltimore."    No sound argument to the con-
trary can be based upon anything to be deduced from either
of these sections, and accordingly the petitioner has been
forced to resort to what he regards as equitable grounds for
a different construction of section 102, based upon alleged
unequal and unfair results from the method of distribution di-
rected therein.    But however his proposition may be disguised
in the fervor of argument, it resolves itself, when analyzed,
into this, that the Court should *read* the word "*white*" into
section 102, and this we cannot do.    The petition alleges, and
the answer admits, that in distributing the sum appropriated
to colored schools, it has been the Comptroller's practice to
make the apportionment in proportion to the respective col-

ored population of the several counties and the city of Baltimore between the ages of five and twenty. This the petition does not ask us to change, and if we should grant the writ prayed for here, we should be compelled in order to give the same construction to the same language in both sections, to read into section 98, the word "colored" and thus to impose an erroneous *judicial* construction upon both these sections, because another department of government, possessing no power to make a judicial construction, had adopted, in its administration of its functions, an erroneous construction of one of these sections. The answer to the whole argument of the petitioner is, that the question argued by him is a question of policy, while the question we have to decide is one of construction of the law as it stands. An examination of the legislation of this State upon the subject will render it clear, moreover, that the Legislature meant exactly what it has said in these two sections.

The Act of 1865, ch. 160, for the first time established a uniform system of free public schools in Maryland. It provided that the State school tax should be distributed "to the Boards of School Commissioners of the city of Baltimore and of the several counties in proportion to their respective population between the ages of five and twenty years," conforming thus to the requirement of section 5 of Art. 8 of the Constitution of 1864; and that language has remained unchanged in both the repealing and re-enacting Acts since that time; viz. 1868, ch. 407, and 1872, ch. 377.

As respects colored schools, the Act of 1865, ch. 160, provided that "the total amount of taxes paid for school purposes by the colored people of any county and the city of Baltimore, together with any donations that may be made, shall be set aside for the purpose of founding schools for colored children, to be established under the direction of the School Commissioners;" and the law today requires that these sources of income "shall be devoted to the maintenance of schools for colored children." The Act of 1872, ch. 377, provided for the establishment of one or more public schools

in each election district for colored children, and directed the sum appropriated for colored schools to be apportioned according to their respective *colored* population. The first appropriation for that purpose was made by chapter 252 of 1872, the amount being fifty thousand dollars, which has been increased from time to time, until it is now one hundred and fifty thousand dollars. The original apportionment of the amount appropriated for colored schools, was therefore correctly made according to the respective *colored* population, though the distribution of the residue of the State tax was still required to be apportioned according to the *entire* respective school population of the several counties and of the city of Baltimore, thus emphasizing the intention *then* to provide different modes of apportionment. When the Code of 1888 was framed and adopted, the word "*colored*" was omitted in providing for the apportionment of the amount appropriated to colored schools, thus making the mode of apportionment uniform. Whether this was deliberate, or inadvertent, we do not know in fact, but the legal presumption is it was deliberate, and in any event the adoption of the Code is conclusive upon the Court. The adherance by the different Comptrollers to the former mode of distribution among the colored schools may have been from inadvertence, or it may have been due to the tender consideration of the comparative poverty of that race; certain it is however that no effort has been made to disturb this arrangement by any one, while it was conceded at the argument that repeated fruitless efforts had been made to induce the Legislature to make the change now sought to be effected by *mandamus.* Elaborate tables were filed with the petition to show the alleged injustice done by this method of apportionment to the counties having small colored population, but with these considerations our judgment is not concerned.

There are, however, obvious difficulties in adopting any method of distribution which will produce equality of burden and participation while ensuring a system of approximate uniform excellence throughout the State. Counties are sep-

arate organizations established for public political purposes, connected with the administration of government, chiefly for purposes strictly·local in character and interest, but the youth of all the counties, are the wards of the State, and it is for the Legislature to determine how its bounty, extended for this paramount purpose, shall be ·apportioned so as to work the greatest good to the greatest number irrespective of locality. Speaking of the rights of·counties in the case of the *State, use of Washington County* v. *B. & O. R. R. Company*, 12th G. & J. 436, the Court·said : "She (Washington County) as a member of the political family has a right to participate in the legislative councils of the country; but the will of the majority, when expressed according to the forms of the Constitution, is binding and obligatory upon her, and to that will, as the rule of her conduct, she is bound to submit with be coming deference and respect."

> *Order affirmed with costs above and below.*

(Decided April 1st, 1903.)